FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 01, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SCOTT S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, the Commissioner of Social Security,[2] <br><br> Defendant. | No. 4:18-CV-05162-EFS <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are cross-summary-judgment motions, ECF Nos. 11 & 12. Plaintiff Scott S. appeals the Administrative Law Judge's (ALJ) denial of benefits.[3] Plaintiff contends the ALJ erred by: (1) improperly rejecting the opinions of Plaintiff's medical providers; (2) improperly rejecting Plaintiff's subjective testimony; and (3) failing to meet her step five burden.[4] Plaintiff further contends that the Appeals Council erred by denying Plaintiff's request for review when Plaintiff submitted additional evidence after the ALJ issued her

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF No. 1.

[4] ECF No. 11 at 8.

decision.[5] The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.[6] After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court grants the Commissioner's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## I. **Standard of Review**

On review, the Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.[7] "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8] The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence."[9]

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.[10] That said, the Court may not substitute its judgment for that of the Commissioner. If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision.[11] Further, the Court "may not reverse an ALJ's decision on account of an error that is

---

[5] *Id.*
[6] ECF No. 12.
[7] *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987).
[8] *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).
[9] *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
[10] *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).
[11] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

harmless."[12] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination,"[13] and where the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."[14]

## II. <u>Facts, Procedural History, and the ALJ's Findings</u>[15]

Plaintiff Scott S. is 51 years old and lives in Kennewick, Washington. Plaintiff filed an application for supplemental security income on December 16, 2014, alleging a disability onset date of January 1, 1998.[16] Sometime thereafter, Plaintiff amended his alleged onset date to December 16, 2014, the date of his application.[17] Plaintiff's claim was denied initially and upon reconsideration.[18] Plaintiff requested a hearing before an ALJ which was held on May 18, 2017.[19] Plaintiff, impartial medical expert Steven Goldstein, M.D., and an impartial vocational expert appeared and testified at the hearing.[20] On August 23, 2017, ALJ Lori L. Freund rendered a decision denying Plaintiff's claim.[21]

---

[12] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[13] *Id.* at 1115 (quotations and citation omitted).
[14] *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted).
[15] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.
[16] AR 15.
[17] AR 22.
[18] AR 15.
[19] *Id.*
[20] *Id.*
[21] AR 28.

At step one,[22] the ALJ found Plaintiff had not engaged in substantial gainful activity since December 16, 2014, the application date.[23]

At step two, the ALJ found Plaintiff had the following severe medical impairments: degenerative disc disease–lumbar spine; morbid obesity; diabetes mellitus with neuropathy; history of right ankle fracture, status post open reduction internal fixation; episodic venous stasis dermatitis; and history of bilateral carpal tunnel syndrome, status post right wrist release surgery.[24]

At step three, the ALJ found Plaintiff did not have an impairment that met the severity of a listed impairment.[25]

At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work.[26] The ALJ found Plaintiff could stand and/or walk approximately six hours and sit at least six in an eight hour day, with normal breaks every two hours.[27] He could also: push and/or pull within the weight restrictions of light exertion; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds.[28] He should avoid unprotected heights and exposure to airborne irritants, hazards or hazardous machinery, and

---

[22] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 16–17, and the Court presumes the parties are well acquainted with that standard process. As such, the Court does not restate the five-step process in this order.
[23] AR 17.
[24] AR 17–18.
[25] AR 19.
[26] AR 21.
[27] *Id.*
[28] *Id.*

excessive, industrial-type vibration.[29] He can frequently handle with the left, non-dominant, upper extremity.[30]

In reaching these conclusions, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[31] However, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence presented in the record.[32]

When determining Plaintiff's RFC, the ALJ examined several opinions by both acceptable and non-acceptable medical sources. When evaluating Plaintiff's physical impairments, the ALJ afforded little weight to treating physician Dr. David Jones' October 2016 opinion and some weight to his May 2017 opinion.[33] He assigned little weight to non-examining physician Dr. Brent Packer, and some weight to Dr. Travis Peterson.[34] He further assigned some weight to state agency evaluators Dr. Jacqueline Farwell and Dr. Olegario Ignacio, Jr, as well as Nurse Joseph Poston.[35] He assigned little weight to Dr. Meneleo Lilligan.[36] Finally, he assigned great weight to testifying expert Dr. Steven Goldstein, who reviewed the record in its entirety, and Dr. James Opara, an examining physician.[37]

---

[29] *Id.*
[30] *Id.*
[31] AR 22.
[32] *Id.*
[33] AR 25–26.
[34] AR 25.
[35] AR 26.
[36] AR 23.
[37] AR 23–24, 26.

At step five, the ALJ found Plaintiff was not able to perform any past relevant work, including his jobs as an apartment manager, commercial cleaner, and laborer.[38] However, given his age, education, work experience, and RFC, the ALJ found there exist significant numbers of jobs that Plaintiff could perform.[39]

The ALJ issued her decision to deny Plaintiff benefits on August 23, 2017.[40] The Appeals Council denied Plaintiff's request for review,[41] making the ALJ's decision the Commissioner's final decision for the purposes of judicial review.[42] Plaintiff filed this lawsuit on October 9, 2018.[43]

### III. Applicable Law & Analysis

**A. The ALJ properly weighed the opinions of Plaintiff's treating and non-examining physicians.**

Plaintiff alleges that the ALJ improperly weighed treating physician Dr. Jones' October 2016 and May 2017 reports, as well as non-examining physician Dr. Packer's report. The Court finds the ALJ appropriately discounted both physicians for reasons supported by substantial evidence in the record. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44]

---

[38] AR 27.
[39] *Id.*
[40] AR 28.
[41] AR 1.
[42] *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.
[43] ECF No. 1.
[44] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

**1) Dr. David Jones**

Treating physicians' opinions are generally assigned greater weight than non-treating physicians.[45] However, if the opinions of the treating and non-treating physicians contradict, the opinion of the treating physician may be rejected only if the ALJ articulates "specific, legitimate reasons for doing so that are based on substantial evidence in the record."[46] Although a non-treating physician's opinion on its own may not constitute "substantial evidence," an ALJ may reject a treating physician's opinion if it conflicts with "the overwhelming weight of the other evidence of record."[47]

Dr. Jones' opinions were contradicted by evidence from non-examining physician Dr. Goldstein, who testified that Plaintiff could perform a light range of work,[48] and examining physician Dr. Opara, who opined that Plaintiff could perform a medium range of work.[49] Accordingly, the ALJ need only provide specific and legitimate reasons for discounting Dr. Jones' testimony. The Court finds that these are specific and legitimate reasons supported by substantial evidence within the record.

/

/

/

---

[45] *Andrews v. Shalala*, 53 F.3d 1035, 1041–42 (9th Cir. 1995).
[46] *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (internal quotations omitted).
[47] *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).
[48] AR 64.
[49] AR 386–90. *See also* AR 24 (ALJ finding that Dr. Opara's report was consistent with medium workload).

i. October 2016 opinion

The ALJ rejected Dr. Jones' October 2016 opinion because (1) Dr. Jones' own objective findings conflict with his opinion of severe limitation; and (2) Plaintiff's self-reported activities are inconsistent with such a restriction.[50]

An ALJ may reject a treating physician's opinion if the opinion conflicts with the physician's treatment notes and objective findings.[51] In October 2016, Dr. Jones examined Plaintiff before filing a disability report.[52] Dr. Jones found that despite Plaintiff's complaints of "significant burning" and cramping in his bilateral feet,[53] Plaintiff had normal range of motion and muscle tone and had no deformities in his feet.[54] He had lighter and atypical sensation in his feet but was still able to sense all eight sites.[55] Notably, Dr. Jones also wrote that gabapentin helped Plaintiff with his pain.[56] Dr. Jones ultimately concluded: "Result: normal."[57]

After conducting his physical examination, Dr. Jones opined that Plaintiff's right ankle pain and history of fracture would cause "mild" or "no significant interference" with Plaintiff's ability to perform one or more work-related activities.[58] He further endorsed that Plaintiff would have "moderate" or "significant interference" with his ability to perform one or more basic work-related activities

---

[50] AR 25.
[51] *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).
[52] *See* AR 459–72.
[53] AR 463.
[54] AR 464.
[55] *Id.*
[56] AR 463.
[57] AR 464.
[58] AR 460.

ORDER ON CROSS SUMMARY JUDGMENT MOTIONS - 8

due to his bilateral feet pain, back pain with sciatica, and peripheral neuralgia.[59] However, despite these mild and moderate limitations and "normal" objective findings, Dr. Jones opined that Plaintiff would be "severely limited" in his ability to work, meaning Plaintiff would be "unable to meet the demands of sedentary work."[60] The ALJ reasonably found the opinion unreliable due to these inconsistencies.

The ALJ further found that Plaintiff's self-reported activities were inconsistent with Dr. Jones' "severely limited" restrictions.[61] An ALJ may discount a medical opinion that is "inconsistent with the level of activity" reported by the claimant.[62] Substantial evidence exists to support the ALJ's reasoning.

First, although Dr. Jones marked that Plaintiff would be "unable to meet the demands of sedentary work," Plaintiff had told physicians that he was "very busy" despite being unemployed.[63] Plaintiff also told his physician in June 2016 that despite his back and shoulder pain he "frequently works under his car and is in a strained position under the car."[64] He testified in the administrative hearing that although it is difficult now for him to get under the car he still will "get under the hood and work on the motor."[65] He also does yard work, mows the lawn, goes grocery shopping "when needed," and drives himself to appointments.[66] He does chores around the house such as "cleaning, sweeping, and mopping,"[67] and stated he is

---

[59] *Id.*
[60] AR 461.
[61] AR 25.
[62] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).
[63] AR 516.
[64] AR 617.
[65] AR 81.
[66] AR 386–87, 506.
[67] AR 387.

"pretty efficient" when making meals, noting that the time it takes him to is "average, if not quicker than most."[68] He also stated he could walk three quarters of a mile to one mile before needing to stop and rest, but noted he would be sore later if he did so.[69] Plaintiff's self-reported activities undermine Dr. Jones' opinion that Plaintiff is incapable of performing even sedentary work. Accordingly, the ALJ did not improperly reject Dr. Jones' October 2016 opinion.

ii. May 2017 opinion

The ALJ assigned some weight to Dr. Jones' May 2017 opinion because it was inconsistent with (1) Dr. Jones' own internal findings; (2) Dr. Jones' objective medical findings; and (3) Plaintiff's self-reported activities.[70] The ALJ also discredited Dr. Jones' opinion because it relied more on Plaintiff's self-reported complaints.[71]

An ALJ may reject a physician's opinion that contains internal inconsistencies.[72] In the May 2017 opinion, Dr. Jones stated that Plaintiff would be able to perform sedentary work due to his limitations,[73] which the ALJ found to be internally inconsistent with other parts of the opinion.[74] For example, Dr. Jones opined that Plaintiff would miss most of a normal work week due to pain, yet he opined that Plaintiff could "anticipate returning to work with a more skilled trade"

---

[68] AR 257.
[69] AR 260.
[70] AR 26.
[71] *Id.*
[72] *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).
[73] AR 700.
[74] AR 26.

and was capable of performing sedentary work.[75] These internal inconsistencies are specific and legitimate reasons to reject a physician's finding.[76] Nevertheless, the Court notes that the ALJ accounted for Dr. Jones' assessment of Plaintiff's handling limitations in the RFC.[77]

Additionally, the ALJ properly weighed Dr. Jones' opinion because it relied heavily on Plaintiff's self-reported complaints. "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion."[78] As Dr. Jones' previous notes reflect a "normal" objective assessment,[79] his findings regarding Plaintiff's pain were almost entirely due to Plaintiff's own self-reports. As analyzed *infra,* the ALJ properly found Plaintiff's complaints about his symptoms to not be credible. Accordingly, this was a specific and legitimate reason to discredit the opinion.

Finally, as analyzed *supra,* Dr. Jones' objective findings and treatment records as well as Plaintiff's self-reported activities are inconsistent with Dr. Jones' findings that Plaintiff is limited to sedentary work. The ALJ therefore appropriately weighed Dr. Jones' May 2017 opinion.

/

/

---

[75] AR 700.
[76] *Morgan,* 169 F.3d at 603; *Rollins,* 261 F.3d at 856. *See also, e.g., Khan v. Colvin,* No. EDCV 12-2106-MAN, 2014 WL 2865173 at *7 (C.D. Cal. Jun. 24, 2014) (an ALJ's finding that a physician's opinion was internally inconsistent "is specific and legitimate").
[77] *See* AR 26.
[78] *Ghanim,* 763 F.3d at 1162 (internal quotations omitted).
[79] *See* AR 464.

**2) Dr. Brent Packer**

Non-examining physicians carry the least weight of all physicians.[80] Even so, state agency medical and psychological consultants are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."[81] ALJs must consider their opinions and "articulate how they considered them in the decision."[82] To reject the opinion of a non-examining physician, the ALJ must refer to "specific evidence in the medical record."[83] However, the ALJ need not repeat the specific evidence in multiple parts of the opinion, so long as "the agency's path [of analysis] may reasonably be discerned."[84]

The ALJ rejected Dr. Packer's opinion because Dr. Packer "reviewed Dr. Jones' [October 2016] opinion and stated that [Plaintiff's] conditions actually caused him greater limitations than what Dr. Jones believed, but his opinion is even less supported by the record."[85] The ALJ did not cite any medical evidence when addressing Dr. Packer's opinion specifically.[86] However, the ALJ cited specific medical evidence when refuting Dr. Jones' October 2016 opinion on which Dr. Packer's opinion is based.[87] Because the ALJ appropriately discounted Dr. Jones' October 2016 opinion that held fewer limitations than Dr. Packer's, the ALJ did not err in discounting Dr. Packer's opinion.

---

[80] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).
[81] SSR 17-2p.
[82] *Id.*
[83] *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).
[84] *Molina*, 674 F.3d at 1121 (internal quotations omitted).
[85] AR 25.
[86] *See id.*
[87] *See id.* (citing AR 463–64).

**B. The ALJ properly discredited Plaintiff's subjective complaints.**

Plaintiff argues the ALJ offered improper reasons for discrediting Plaintiff's subjective complaints and testimony regarding the severity of his symptoms.[88] The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.[89] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[90] In the present case, because the ALJ determined Plaintiff's medical impairment could "reasonably be expected to produce the above alleged symptoms," he has met step one.[91]

"If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[92] The ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."[93] General findings are

---

[88] ECF No. 11 at 16–18.
[89] *Molina*, F.3d at 1112.
[90] *Id.* (internal quotations and citations omitted).
[91] AR 22.
[92] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
[93] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and quotations omitted).

insufficient.[94] Courts may not second-guess ALJ findings that are supported by substantial evidence.[95]

In making an adverse credibility determination, the ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition.[96]

Substantial evidence exists to show Plaintiff's allegations were inconsistent with the objective medical evidence. Although Plaintiff complained of chronic and severe pain in his ankle and legs[97] and stated he could not sit for longer than 10 minutes at a time,[98] he regularly presented to physicians as being in "no acute distress" and was able to ambulate "with no assistance" despite an abductory and antalgic gait.[99] Plaintiff is also capable of walking on his heels and toes.[100] Despite some tenderness and swelling, he consistently demonstrated normal range of motion[101] and had presented negative straight leg raises in both seated and supine positions, with no muscle spasms.[102] Additionally, Plaintiff's November 2015 MRI results showed only "moderate disk space narrowing at L5-S1" that "could be causing

---

[94] *Lester*, 81 F.3d at 834.
[95] *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).
[96] *Id.* at 958–59.
[97] *See, e.g.*, AR 350, 463.
[98] AR 479.
[99] *See* AR 388, 440, 444. *See also Rollins*, 261 F.3d at 856 (presenting with "no acute distress" and other benign findings and recommendations is inconsistent with a finding of total disability).
[100] AR 388.
[101] *See, e.g.*, AR 392, 443, 464.
[102] AR 388.

irritation" but had no nerve compression, as well as "mild degenerative disk disease" at L4-L5 that "does not cause canal stenosis or nerve root compression."[103]

Plaintiff presented in April 2015 for an evaluation of his alleged carpal tunnel syndrome, wherein he demonstrated a grip strength of 5/5 and was able to tie his shoes and pick up small and large objects with no issue.[104] His Phalen's and Tinel's signs were negative.[105] However, only two weeks later, Plaintiff was seen by another physician and complained that his carpal tunnel syndrome caused him "moderate" symptoms and resulted in "decreased grip strength" and "difficulty with grasping."[106] He claimed he had been experiencing these symptoms for 20 years.[107] Plaintiff's allegations regarding his carpal tunnel syndrome are inconsistent with objective medical evidence.

Further, as analyzed *supra,* the ALJ properly found that Plaintiff's self-reported activities conflicted with the objective medical evidence, as well as Plaintiff's symptom allegations.[108] Plaintiff's activities—including working with his car and in the yard as well as his ability to walk three quarters of a mile to a mile—are inconsistent with the limitations he has alleged due to his back, leg, and wrist

---

[103] AR 566.
[104] AR 386, 388
[105] AR 388.
[106] AR 413.
[107] *Id.*
[108] *See Molina*, 674 F.3d at 1112–13.

pain, and are "physical functions that are transferable to a work setting."[109] Accordingly, the ALJ properly discredited Plaintiff for this reason.

Finally, substantial evidence shows that Plaintiff's symptoms resolved with treatment, and impairments that can be controlled effectively with medication are not disabling.[110] In October 2016 Plaintiff wrote that he experienced "uncontrollable chronic pain."[111] However, multiple physicians had remarked that his leg pain was improved by taking gabapentin and other pain medications.[112] Additionally, Plaintiff underwent carpal tunnel release surgery in his right hand in February 2016[113] after complaining primarily of ongoing numbness and tingling in his right hand.[114] After the surgery, Plaintiff reported that the numbness in his hand had "completely resolved."[115] Although he reported he experienced "some" aching and pain in his right hand, his physician informed him the pain would gradually resolve over time.[116] His physician also recommended therapy to assist in the pain, which Plaintiff declined.[117] Failure to seek treatment may also be relied on to discredit a claimant's alleged symptoms, as it suggests the Plaintiff's symptoms may not be as

---

[109] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).
[110] *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).
[111] AR 459.
[112] *See, e.g.*, AR 463, 513, 517, 627.
[113] AR 675.
[114] AR 689.
[115] AR 675.
[116] *Id.*
[117] *Id.*

significant as alleged.[118] Accordingly, for the aforementioned reasons, the ALJ properly discounted Plaintiff's subjective testimony.

### C. The ALJ did not err at step five.

At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite their identified limitations.[119] At an administrative hearing, an ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy.[120] A vocational expert's testimony may constitute substantial evidence of the number of jobs that exist in the national economy.[121] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[122]

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by his providers.[123] However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[124]

/

/

/

---

[118] *Fair*, 885 F.2d at 604.
[119] *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. § 416.920(g).
[120] *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999).
[121] *See Bayliss*, 427 F.3d at 1218.
[122] *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).
[123] ECF No. 11 at 19–20.
[124] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

### D. The evidence submitted to the Appeals Council after the ALJ issued her decision does not undermine the substantial evidence supporting the ALJ's decision.

Plaintiff alleges that two pieces of evidence submitted after the ALJ's decision warrant a finding of disabled or remand.[125] Plaintiff submitted two pieces of evidence: (1) a statement from Dr. Jones stating that Plaintiff could not work dated October 6, 2017; and (2) an MRI report dated August 3, 2017.[126] The Appeals Council considered the new evidence and found it did not change the outcome of the ALJ's decision, therefore it denied Plaintiff's request for review.[127]

"When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner," subject to a substantial evidence review based on the record as a whole.[128] However, evidence submitted for the first time to the Appeals Council becomes part of the administrative record, which the Court must consider "in determining whether the Commissioner's decision is supported by substantial evidence."[129]

The Court finds that the new evidence submitted by Plaintiff does not undermine the substantial evidence supporting the ALJ's decision. First, the Court agrees that Dr. Jones' letter generally repeated Dr. Jones' prior opinions that Plaintiff could not work due to his conditions,[130] and the ALJ properly weighed Dr.

---

[125] ECF No. 11 at 18–19.
[126] AR 34–36.
[127] AR 2.
[128] *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).
[129] *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012).
[130] AR 34.

Jones' opinions that state the same. Accordingly, the new letter fails to undermine substantial evidence supporting the ALJ's opinion.

The Court similarly finds that the submitted MRI report does not undermine the substantial evidence. Although Plaintiff is correct that the 2017 MRI reflects a new disc protrusion in Plaintiff's L4-L5, the physician concluded that "overall, there appears to be mild spinal canal narrowing and mild bilateral neural foranimal narrowing" in L4-L5.[131] The physician also stated that the findings in L5-S1 "appear unchanged" from prior imaging and still reflected "mild spinal canal narrowing" and "mild-to-moderate bilateral neural foranimal narrowing."[132] Even with the disc protrusion, the 2017 MRI results are not significantly different from the 2015 MRI as they still reflect overall "mild" and "mild-to-moderate" findings.[133] The ALJ discussed the 2015 MRI findings and considered them in his opinion.[134] Accordingly, the 2017 MRI report does not undermine the substantial evidence supporting the ALJ's decision.

## IV. <u>Conclusion</u>

Having reviewed the ALJ's findings and the record as a whole, the Court concludes that the ALJ did not err in weighing medical opinions, rejecting Plaintiff's subjective testimony, or in issuing findings at step five. The Appeals Council did not err when denying reconsideration.

//

---

[131] AR 36.
[132] *Id.*
[133] *Compare* AR 35–36 *and* AR 566.
[134] *See* AR 24.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office is directed to substitute Andrew M. Saul, the Commissioner of Social Security, as the Defendant.
2. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**
3. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED.**
4. The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.
5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this   1st   day of November 2019.

                    s/Edward F. Shea
                    EDWARD F. SHEA
                Senior United States District Judge